Mr. Fitzpatrick, I understand you have a motion. I'd like to move to admit four law clerks if they'd come up, please. Good morning, Your Honors. I'd like to move the admission of Daniel Guarnera. He got his undergraduate degree from American University. His law degree is from the University of Virginia. And he's admitted to practice in the state of New York. And he's a law clerk to Judge Sykes, as are the next two. Joshua Handel received his undergraduate degree from the University of Michigan. His law degree is from Yale. He's admitted to practice in New York. And, as I said, he's a law clerk to Judge Sykes, as is Daniel McKellie. He received his undergraduate degree from the University of Chicago. His law degree is from NYU, New York University. He's admitted to practice in Illinois. And, as I said, he's a law clerk to Judge Sykes. And Judge Williams' law clerk, Capri Saunders, received her undergraduate degree from Northern Arizona University. She's admitted to practice in the state of Missouri. And her law school degree is from Iowa. I move their admission, Your Honors. Seeing no objection, your motion is granted. Actually, with great enthusiasm, we look forward to seeing all of you appear many times before our court. Welcome to the bar. And I believe you need to be sworn in now. Thank you. Great to see you again. We found Mr. Warren is a divine consultant, determined to be a counselor of the court, operating according to law. And he will support your prosecution in the United States. Thank you. Well, the court has one case on the docket for today. United States against Paul Davis. And I believe we will hear first from Ms. Bonamici. May I please the court? I'm Deborah Bonamici. I'm representing the United States. Good morning. Your Honors, this court does have jurisdiction to hear the appeal from the government of the district court's dismissal without prejudice of the indictment in this case. Ms. Bonamici, forgive me, but before we get into this, would you be kind enough to give us a rundown on where all of the various Dash House cases are? Your Honor, all of the cases are currently in the pretrial stage. I'm not sure that I'd be able to list them individually for you, but the same discovery request was made in each case, approximately. Certain of the judges who are handling the cases denied discovery. Others granted discovery. Those that granted discovery have received additional discovery requests. And were the judges granted very limited discovery? And in no case has the defendant yet filed a motion to dismiss based on selective prosecution. It's my understanding that that's still in process and that the defendants have been granted additional time to prepare their motion. And what has been the government's stance in the cases where discovery has been granted? With respect to the, in every case, the government has objected strenuously to the defendant's showing. It has argued in the court that the defendant has not made the showing that's required under Armstrong. In the cases where the government's objections have been overruled, the government has attempted to comply as best we can. So you are complying in certain of the cases? We're doing the best we can. We seek review of this issue in this case, Your Honor. We sought review in this case before we complied with any of the discovery orders in any of the cases. Ms. Bonamici, at least in terms of the orders that were attached to the briefs that we saw in this case, it appeared that the scope of the discovery that was ordered in most of the other cases was much more limited than the scope in this case. Is that a fair statement in your view? I think that's a fair statement, although there is a range. The scope of the discovery ordered by, for example, Judge St. Eve was very limited, was the most limited. Then, as I say, there's been a range. But I would say the range begins with no discovery. It goes to Judge St. Eve's order, which also included a thorough analysis of the issue, except for one point, we would say. Then it goes all the way to Judge Gerard's order, which goes the broadest. Can I ask this more in terms of the background? In those situations where district judges ordered the disclosure, was there in-camera review? I know in St. Eve's situation that she reviewed certain documents, policies, procedures. Was that the process in those other cases? In some respects, yes. This becomes like an item-by-item answer that I'm not really prepared to give you in detail. But in some cases, yes, in-camera review was held. In other cases, it was not. In Judge St. Eve's case, for example, she reviewed certain material in-camera and then ordered that a limited portion of the material that she reviewed be disclosed to the defense. The material that she ordered disclosed was limited to information related to the criteria used for targeting individuals with this kind of staying operation. And when there was in-camera review in the other cases, was that category of document reviewed by judges? That is, the policies? I'm not sure about that, Your Honor. I can't say. It was not demanded in this case or accepted in this case. The other difference between the cases is that in some of the cases, there was a lack of evidence. Some of the cases, including this one, there was a lack of evidence indicating that the defendants were targeted at all. The government's presentation and the affidavit in support of the complaint in this case, as well as its presentation in its opposition to the motion for discovery, put forth facts indicating that even the initial target was the first person to initiate a discussion about this, and he did so in the course of making controlled sales of heroin and crack cocaine to the confidential informant. And the other defendants in the case were recruited either by the first defendant, Mr. Davis, or by an individual that Mr. Davis asked to assist him by essentially loaning him his crew. And the defendants did not present any type of affidavit or anything else to contradict those facts, and so there was the additional issue of whether there was even targeting at all involved in the case here. First, we're dealing with two issues here, one the jurisdiction and the second one the discovery. And because what we have here is a dismissal without prejudice, the government retains its ability to re-indict the defendants and proceed with the prosecution. In that way, even if it loses the appeal on the merits. So we have, it seems to me, a situation where heads I win and tails you lose. Well, though, you help me with that. I think we would see it a different way. We would say it's heads the defense wins and tails the government loses. The reason being that the finality issue or finality interest that you were referencing operated quite differently in the case of the government. As you know, the defendant is entitled to review of all the pretrial orders at the conclusion of the case, whereas the government, as a practical matter, is unable to obtain review of most of those issues. If there is a conviction, obviously there's no need for review. And if there's an acquittal, the government is almost always not entitled to review of any kind. So this is a situation where this is really the government's only option for review. And this is the reason that this type of review is permitted by the statute. This is exactly what the statute was intended to obtain. Let me just follow up on this for a minute. Could you talk a little bit about the process of obtaining the dismissal of the indictment with prejudice or without prejudice, in this case without prejudice, and what cost you see? Do you see this as a cost-free option for the government, as Judge Roeburn suggested? Absolutely not, Your Honor. Absolutely not. All of the costs that arise from an interlocutory appeal are felt in different ways sometimes. They're felt by both parties. You have a situation here where if the government obtains dismissal of an indictment, there's a risk that all of the defendants will be permitted bond, and some may flee. There are delays that, as a general proposition, inure to the detriment of the government who bears the burden of proof. There are delays that are necessary to litigate the issue. Those costs, I think, are reflected in the fact that, in reality, in the 45 years or so since the statute has been on the books in the form that it's in, there's been very few. I mean, there are less than 20 appeals nationwide in 45 years challenging a dismissal that was incurred based on a discovery issue. I mean, that demonstrates that there is a cost to the government. It is not cost-free in any way, not to mention the fact that the grand jury is an independent body. That was an interesting argument, Ms. Bonamici. When is the last time a grand jury in the Northern District, how often does a group of grand juries in this district refuse the government's request for indictment? It is, as we have said before, it is not a frequent thing, but that does not necessarily... When it happens, I assume everybody in the office would hear about it. No, not necessarily. No? I don't think so, no. How often does it happen? I can't tell you how often it happens. I know that it's happened to me, but I can't... In your career, how many times? How many times? Well, it's been a while since I've been operating in the grand juries. Once? That's a fair example. Once, for me, back in the days when I was doing grand jury cases. May I raise my hand a moment? Pardon me? How often does the prosecution ask the grand jury or does the grand jury vote without discussion of the prosecution wants an indictment or not? That is to say, is it your experience that the prosecutor directs the grand jury to an indictment or simply presents the matter and lets them vote? It's the latter, and it's also my experience that in a number of cases... I'm requesting the proponent to first assume that the prosecution is asking for an indictment. Has the grand jury been used on occasion to bring in no bills or to get rid of cases? That I don't know. It's specifically intended to obtain a no bill. That I do not know of. It may be true, but I don't know of it. What is... It used to be true. I can tell you that as a matter of fact. Okay. Well, and it may be now, and I'm not aware of it. But what I can tell you is that in our experience, there are a number of cases that are investigated through the grand jury. And my own experience, and the experience of our office, is that grand jurors act in just the same conscientious way that pedigrees act. And they get very involved in some of these investigations, and the government is required to present witnesses that they might not otherwise present and present evidence that they might not otherwise present based on the interests of the grand jury. So it is not a fact that the grand jury is merely a rubber stamp for the government. Given the basis that you presented to the grand juries that indicted the defendants in these stash houses, is there any doubt in your mind about whether a new grand jury would be prepared to indict? I would expect that we would present sufficient evidence to support an indictment. And if we did that, I would expect and hope that there would be no problem. That doesn't mean that it wouldn't take— Theoretically, there's a possibility, but I know. Is it true that all the defendants in this case have remained in custody while this interlocutory appeal has gone forward? That's false. Most of the defendants have been released on bond. One of the defendants has not been released on bond, and that has been a function of his having difficulty presenting surety to the court. The government did not object to his release on bond, subject to the court's requirements. Thank you. Counsel, you may have indicated, and I dismiss it, how many of these cases are pending right now? I believe there are 12. Is that right? I think there may be 12 or maybe less than that. I honestly don't recall. You asked Judge Dara to dismiss the indictment without prejudice. Would it have been within his discretion to refuse and opt for a different sanction once he said that it was the government's intent not to comply with the indictment? It would have been. It would have been. We believe that a dismissal without prejudice was appropriate. But tell me what that different sanction would have been. I'm sorry? You know what? Do you have any idea of what a different sanction might have been if you had refused? Well, the court also— As you did. If we had sought a dismissal without prejudice and the court wanted to impose a different sanction, that's what you're asking me, what other sanctions would have been available to the court? The other sanctions that would have been available would be a dismissal with prejudice, a limitation on the government's ability to present evidence. That is not necessarily the best fit with this circumstance, so I doubt that that would be what the court would consider. I think the two things that the court would consider would be a dismissal with or without prejudice. We requested a dismissal with prejudice or without prejudice, and the court and the defendants—none of the defendants objected to that whatsoever, and the court granted the request. What we requested—I mean, this wasn't a motion to dismiss. This was a request that the court, as a sanction, dismiss the case so that we could pursue an appeal, and the alternative might have been contempt. That's the other. As far as that goes, as the cases repeatedly say, it's unseemly for the government to demand contempt proceedings, to refuse to comply and be forced to receive a contempt in order to obtain review of an important issue, and this is an important issue here. There's a statutory question that was explored a bit in the panel opinions that maybe you could address for a minute. Section 3731, obviously, is the statute that deals with government appeals. It doesn't mention appeals from discovery orders, which is what got you into this box to begin with. I mean, it really is the discovery order that you are trying to get reviewed. Should we infer anything from the fact that the statute doesn't have— or language about new trials? What, if anything, should we infer from that part of the statute or part of the statute? I don't think you should infer anything. I think that you should infer from the fact that the statute expressly states that the government may appeal dismissals of an indictment, which is what we have in this case, that the plain text of the statute allows this appeal, and you can infer—if you want to focus on the discovery piece, you can infer from the legislative history. You don't have to infer. You can know from the legislative history that appeals from discovery orders were expressly considered as part of the Senate committee report. Is it correct, Ms. Bonamici, that you're referring to the APEX distributing case? Pardon me? You're referring to the discussion of the APEX distributing case? Well, I'm referring to their discussion of the issue, and they did mention the APEX distributing case. Where the dismissal was with prejudice, correct? Yes, but that did not factor into the comments. I mean, I don't know— Obviously, the question is whether the legislative history indicates an intent to dispose of the finality rule, right? No, I don't see it that way at all. What I see is that the legislative history reflects an intent to permit government appeal in certain limited respects, a certain limited number of orders. And one of those orders is an order dismissing an order, judgment, ruling, dismissing an indictment or information. And the only exclusion that's included in the statute to that grant of authority is the exclusion for orders of dismissal that would preclude further prosecution. And when an exclusion is provided by the statute, normally that is taken to mean that other exclusions should not be applied. The plain text of the statute does not distinguish in any way between dismissals with or without prejudice. And the interpretation by the Supreme Court that all distinctions regarding the various different types of dismissals have been eliminated by the statute is absolutely in keeping with the plain text of the statute itself. Let me ask you this then, hypothetically. Okay, say the government loses a motion to suppress because a search was improper. And that's after the district court had issued a discovery order like the one here. If the government appeals the motion to suppress, would you say that that means we could also review the discovery order? I'm not sure that I can envision a circumstance in which the motion to suppress would coincide factually with a discovery order. But perhaps you can envision one. I can't as I'm standing here. What we're talking about here is an order that was issued as a sanction for failure to comply with the discovery order. So the two orders are inextricably linked. It's hard for me to picture a situation where a motion to suppress would fall in that category. But the other thing is that the way the statute reads, the authority to appeal adverse rulings on a motion to suppress comes with additional requirements. So for example, the government must certify that the evidence, the particular evidence is critical to the government's case. And it's hard to see how those requirements would fit with tacking on a discovery order. Essentially, isn't the dismissal without prejudice vehicle that you followed in this case a backdoor equivalent of the section 1292 interlock, which Congress authorized for civil cases? What I would say, Your Honor, is that this statute applies to government appeals and only government appeals. It doesn't change anything with respect to appeals brought by a criminal defendant or appeals brought in civil cases. And this statute sits in a context that's very specialized. It's one in which the government's opportunity to appeal is narrow and limited, and particularly not only because the statute is limited, but also by operation of the double jeopardy clause. And so the statute is a grant of authority, period. I don't think that it should be seen as an exception in any way other than some of the orders that are being permitted to be appealed are not final orders. What role does section 1291 in the final order requirement play here? Because your own brief cited section 1291 in addition to section 3731, so I assume that you agree it applies. Well, in our judgment, 3731, the Criminal Appeals Act, provides authority, provides jurisdiction to this court to review the order in question. Standing alone. We also view the dismissal of an indictment, even one without prejudice, as a final order as to that particular indictment, which it clearly is. It is not an order that terminates the litigation in total, but it would be unreasonable to require that level of finality here when, in reality, the government is precluded from appealing this order at the conclusion of the case no matter what happens. There's no opportunity here. So in that sense, it is not the case that there's an equality of opportunities for review. And what we have here is an order that the government feels strongly is invalid in that it does not meet the requirements set by the Supreme Court in any way, shape, or form. I'm strong on that point, I take it. Yes, we need review. There are ways to get review, but for interlocutory appeals in the civil context, typically the stakes have to be raised, especially with discovery, with contempt or with mandamus, so that the court has discretionary power over that. And what you seem to be seeking is a form of interlocutory review of discovery orders that puts that power in the government's hands without court screening that possibility. Or dismissal with prejudice, which raises the stakes for the government to see if it really is important. What I would say is that it is not appropriate, particularly given the text of the statute, to impose a requirement on the government to choose between a meritorious prosecution and the vindication of important rights and important interests under the Constitution that you have here, rising to constitutional dimensions such as separation of powers. So what I would say is that Congress decided, and nobody has argued that they were constitutionally unable to do so, they have decided that the government should have an opportunity to appeal a dismissal. And that dismissal does raise the stakes. So in other words, there is an elevation of stakes here, not as high as it would be if we were required to potentially give up a meritorious prosecution, but there is a raising of the stakes here. Congress decided that was the level of stakes. Why isn't mandamus sufficient here? Well, mandamus, as you well know, mandamus presents a completely different set of circumstances in the sense that it has a different standard. I mean, mandamus, we understand to be reserved for the most... For exceptional cases. Pardon me? Yeah, exceptional cases, very important to you. Right, but when you... District judge is off the reservation. Consider the mandamus cases that we have brought to your court. Let me interrupt you since otherwise I'll never be able to ask questions. Has the Northern District or the Justice Department ever published any criteria for stings, stash house stings, or other stings? No, we don't, Your Honor, and there's a good reason for that. Pardon, there's a reason, did you say? There's a good reason for that. I mean, in general, we don't publish the criteria for conducting covert investigations. Well, I shouldn't have said publish. Are there some standards in... I mean, obviously, what they're asking for in discovery is very, very broad, but if they just ask you, what are your criteria for stings? That is how Judge St. Eve... Would that be improper? That is how Judge St. Eve operated. I see that I may be getting into my rebuttal time. You should answer Judge Posner's question. Yes, I did, but I just looked up about it. That's how Judge St. Eve saw it, and the objection that we had to even that was that it did not comport with the requirements of Armstrong in that the defendants had not made the requisite showing, and that particular piece of information is actually one of the crucial pieces of law enforcement efforts. I mean, to disclose that, to tell the entire world, here's what we're looking for, quite obviously enables defendants to avoid scrutiny, or criminals. What about confidential disclosure in the litigation, you know, sealed and so on? The reason I ask is that, you know, we've been troubled by these stings. They're a questionable basis of law enforcement, and you'd think the plaintiffs would at least be entitled to some sense of how the government picks people. Well, my answer to that is twofold. One is, a sting was what was involved in Armstrong, just to be clear, so it's not a sting. We understand that the court has raised concerns about this type of investigation, and we have taken that to heart in reconsidering various aspects of the way that we proceed with these cases. But that alone provides no basis, no basis at all, for obtaining the type of discovery that has been requested here. So I'm not talking about, as I said, I think the discovery they've asked for is extremely broad. You spend a lot of time with your staff looking for that. I'm just wondering whether disclosure of some criteria would help to alleviate these concerns about discrimination. And as you're considering that, because this is a part of a follow-up on what Judge Posner said, short of an admission which seems unlikely, what could a defendant submit that would make the showing where you would agree there was enough for discovery, because much of the information that's relevant to select the prosecution claim is solely in the hands of the government. So exactly what could a defendant do? Well, it actually, with respect to the interpretation of the facts, and in order to determine a class of similarly situated individuals, there's a lot of information, known to the defendants individually and available through the public record, regarding the particular types of defendants that at least in this jurisdiction, but this would be true nationwide, have been the subject of these types of investigations. There are the affidavits attached to the complaint, memorandums submitted by the government with respect to bond, with respect to sentencing. There's a lot of information about the individual defendants who have been charged in these cases available to the defense. Certainly enough to create or deposit a class of similarly situated individuals that is a lot more narrow than the population of the Northern District of Illinois. But beyond that, there are other details that sometimes arise in cases that would be useful for this purpose. For example, if in discovery the defendants could see evidence of conduct or statements made by agents that reflect bias, racial bias. I mean, that is the subject of a recent decision in the Fourth Circuit, I believe. Also, there may be situations where a group of defendants are arrested and the prosecution is only pursued with respect to some of the defendants and not others. There may be disparate treatment in the group. These are relatively large groups of defendants and there may be disparate treatment afforded different defendants in the same case. Obviously, the defense is collaborating on this and these are topics about which information may be shared. We would disagree that all the relevant information is in the hands of the government here. We don't agree with that. And in any event, at the end of the day, Armstrong focused on that very point and repeated it again and again. But Armstrong never reached the merits. Armstrong was completely silent on the question of jurisdiction. It wasn't even briefed by the parties in that case. That's true. But as to the merits, Armstrong made clear. The bar is high. The bar is high for a reason. The bar is not a mistake. It's not something that just happened. It is intentionally high. And the defendants in this case did not even come close, not even close to meeting it. In particular, because they provided no evidence whatsoever that even raised a question sufficient to obtain a hearing on the issue of whether any of them were targeted at all. That's the bottom line. But the other aspect of it, as we've already agreed, was that the statistical evidence that they presented was no different than that presented in Armstrong. The Supreme Court has held it's insufficient. Okay. What we're going to do is we will add five minutes to the appellee's time and we'll give you five minutes for rebuttal. Thank you. At the end. Bill Tice. May it please the Court, Bill Tice for the appellees. I'm going to be presenting arguments to the Court on the jurisdictional issue and Ms. Stigler will deal with the merits. I know there were some questions about what's happening in these other cases and she would be in a better position to answer questions along those lines since she's been involved in some of those other cases. We split our time 20-10 mainly because we didn't know the level of the Court's interest. If the Court has lots of questions, I'm prepared to go longer. If the Court is not that interested in jurisdiction. Well, the Court is interested in jurisdiction, I assure you. Maybe you should start there. We don't know how broad the interest is in that subject. Right. We don't know how deep it runs. Very. We are all agreed that the discovery order was not appealable. So we're here because the government had this bright idea. Please give us a dismissal without prejudice and then we'll be able to get to the Seventh Circuit. You say that, although of course that's precisely the template that Armstrong sets forth. Whether or not there was discussion, it's quite obviously the same situation. Well, let me deal with Armstrong. Of course, as we all know, the Supreme Court and Armstrong did not talk about jurisdiction. This is the lower court. We ought to say that they just blew it and we're going to find that they were wrong. What happened in the lower court, and I haven't been able to access the briefs in the lower court, but the Ninth Circuit, in the en banc opinion, was explicit and unambiguous in saying that if the government was wrong on this issue, that was the end of the case. Now, if we're going to put that in a box, is it with prejudice or without prejudice, it sounds to me like the government's appeal was of an order that was dismissal with prejudice because what the government in this case wants is if they win, they get to go back and resume the case, and if they lose, they get to start it all over again. That's certainly not what the Ninth Circuit and Armstrong envisioned. I'm not saying you should decide the case a certain way because that's what the Ninth Circuit said, but certainly, I knew we'd get there, but certainly the Supreme Court has not directly spoken to this issue. We wouldn't be here if they had been more explicit about it. Counsel, let me tell you what my problem is with your position on jurisdiction. The paragraph of the Criminal Appeals Act under which this appeal was taken, paragraph one, authorizes appeal from two kinds of things, an order dismissing an indictment and an order granting a new trial, and an order granting a new trial is canonically non-final. The question is why, within the same paragraph and without using the word final, would there be a finality requirement for an order dismissing an indictment but not a finality requirement for an order granting a new trial? I think we have to be cognizant of the history. The new trial provision came in later, after 1971, because there were a number of circuits that said, no, government, you don't get an appeal of an order granting a new trial. I'm not going to stop there for what it's worth. The next paragraph is the one that authorizes an appeal from a decision or order suppressing or excluding evidence, and that's canonically non-final. And the third paragraph authorizes an appeal from an order modifying the conditions of an order granting release, and that's canonically non-final. As I understand your position, it is that of all the things listed in the Criminal Appeals Act, and there are a whole bunch, the only one subject to a finality requirement is an order dismissing an indictment, and that's without any clue in the text of the Criminal Appeals Act that it is uniquely singled out for finality. That's what really troubles me about your position and what I hope you will address. I will give it my best shot. If we confine ourselves to some sort of plain text analysis that the government's position has some superficial appeal, but the Supreme Court in Wilson was very explicit in saying that it did not find the language of the Act very helpful, and instead it looked to legislative history. But you don't want to rely on Wilson because Wilson's bottom line is the government can appeal whenever the appeal doesn't violate the Double Jeopardy Clause, and that doesn't help you here. Well, I think their language in Wilson is much too broad, as this Court recognizes, it's volatile. Look, we're just a court of appeals. We can't say we're sorry, Supreme Court, you just blew it, we're not going to follow it, we're going to do something else. We actually have to follow what they say. Now what you might say is it's too broad in the sense that the Criminal Appeals Act doesn't authorize appeals directly from a discovery order because discovery order isn't listed. But what I understand the Supreme Court to be saying is that it authorizes an appeal from anything that's listed whenever the Double Jeopardy Clause doesn't bar it. And dismissing an indictment is listed. So you don't want to rely on Wilson. But what the conference report had in mind, and the Supreme Court looked to the conference report, were dismissals that were with prejudice. The Court gave a lot of attention, or the Congress gave a lot of attention to Apex, and that was a dismissal with prejudice. In 1971, no one was thinking about the idea that the government could dismiss a case without prejudice in order to get review of a discovery order. I'm not disputing what people were thinking, but I hope you will deal with the nub of my question, which is that if you just read the language of the Act, everything seems to be authority to appeal from interlocutory orders, like orders suppressing evidence or orders for new trials. The gist of your position is that we have to carve out, treat orders dismissing indictments differently from every other order in the Criminal Appeals Act. And I'm wondering how that's possible without a textual clue that there's supposed to be such a distinction. The starting point of any analysis is the doctrine of finality, which is found in 1291. Why is that? Why isn't this a statute that confers authority, as 1292A1 does, for injunctions on the civil side? Congress has passed a number of statutes that deviate from the finality rule. Given the double jeopardy clause, when the government loses a criminal prosecution, it's overwhelmingly likely it's not going to be able to appeal. So the usual thing that we say in 1291 cases isn't available. You can't say, well, you just have to wait and take your appeal when the time comes. So I don't see why this statute, entitled Appeals by the Government, has to start from a finality starting point. I don't know why it doesn't start from the language of statute starting point. Because the statute, when it talks about dismissal, you're speaking within a context, and the context is dismissals with prejudice. Where do you see that in the first line of the statute, when the granting a new trial part is in there, too? Of course, the statute does not distinguish between, on its face, in the actual language, between prejudice and without prejudice. And maybe the statute is thinking, I don't know what it's doing, but maybe it's thinking about the fact that you don't just go in as the government and dismiss the indictment yourself. You have to ask the district court to do it. The district court, I suspect, will probably be amenable a lot of the time, but might not think it appropriate other times. And your position also assumes, really, that the grand jury has no meaning. And maybe it's a practical matter. We all think that the grand jury just salutes when the U.S. attorney tells it to. But the system does have the grand jury in there. And so I guess I'm reluctant, as a formal matter, to assume that the government just sallies in and gets a new indictment with no cause. I think part of your question is another way of asking about the government's position, that they really had no other option here. Even if they did have another option, if the statute allows an appeal, without adjectives, from a decision dismissing an indictment, not a decision, or a prepositional phrase, it doesn't say a decision dismissing an indictment with prejudice. It just says a decision dismissing an indictment. And we know it can be either way. Why do we insert the additional words? You know, in 1971, as well as even today, the federal rules of criminal procedure say nothing about dismissals with prejudice or without prejudice. I'm bothered by your references to what people were thinking in 1971. That's like saying, well, you know, in 1791, people who wrote and ratified the Fourth Amendment weren't thinking about electronic surveillance. Therefore, electronic surveillance cannot be prohibited by the Fourth Amendment. Is that what you're saying? I don't have to build it. 1971, that's 44 years ago. Now, a lot of things change in 44 years. I don't want to freeze the statute to what people were thinking about a half century ago. But the one thing that has not changed is that the federal rules of criminal procedure do not talk about dismissals with prejudice or without prejudice. They just talk about dismissals. And so you have to keep that word dismissal in mind with some other things that are important. Namely, that you don't want to have a bunch of interlocutory appeals. If the court were to accept the government's position every time a district court enters an order of discovery. This, of course, is an unusual order. The discovery that the defendants are seeking is very broad. Imagine the U.S. Attorney's Office spending an awful lot of time responding to this discovery request. And if it should turn out the discovery was improper, it would be a waste. Well, if the government wants to appeal an order like that, they can ask the court to dismiss without prejudice. That's what they did. Excuse me, they can ask the government to dismiss with prejudice. With prejudice. And then, of course, the U.S. could appeal. Or the district judge might enter an order excluding some evidence. And then the U.S. could appeal. Right. That's sort of my follow-up question. Since it's perfectly easy to see how an appeal can happen in a case like this, why would one strain to stick the word with prejudice or final into this little section of the criminal appeals? Because unless the government has to make that choice, it's much too easy for them to be seeking these dismissals without prejudice. In civil cases, you wouldn't even be troubled by this at all. If someone said, oh, I don't want to present my doctor for deposition, dismiss my case without prejudice so I can appeal. But civil cases are not analogous because you can take an appeal if you lose at the end of the case. And that's not true. Congress, that's why the double jeopardy concern permeates this. Whenever there's a double jeopardy problem, actually that's the end of the first paragraph, no appeal shall lie where the double jeopardy clause prohibits further prosecution. So if jeopardy is attached and the government decides then to dismiss the indictment, that's a whole different thing. Well, but that's not always true. If the government had complied with this discovery order and Judge Guerra had said, you know, you've made out a case of selective prosecution. I'm dismissing this prosecution. At that point, the government would be able to appeal. And I'm sort of like a private agent. Your reading of the statute, though, equally applies to any reason why an indictment might be dismissed without prejudice. And in many of them, I just don't see how at the end of the day the government would be able to get rid of the legal issue. I mean, this is just Congress. Congress can authorize interlocutory appeals if it wants to. And it seems to me that's what it did in this statute. Let me go back and try to answer a question that Judge Williams had about the motion to suppress. If the judge would grant the motion to suppress, the government would be able to, in the context of appealing that order to suppress, appeal the discovery orders as well. So the government has an opportunity. If it were within the scope of the motion to suppress, though, I don't think you just tag on an additional issue that wasn't appealable. Maybe there's a discovery order that's relevant to a motion. Oh, of course. Yeah, that was what I was trying to convey. In that case, it's all part of the motion to suppress. In fact, this motion to suppress should be granted because outrageous prosecutorial conduct or something. If the appeal is authorized by the Criminal Appeals Act, then it's usually an interlocutory appeal. You're saying not always, but I don't see why we have to start with this concept of finality when this is not the same as the civil context. Well, this finality is a basic principle that covers both civil and criminal, and it's our position that Unless Congress has made an exception. So, yes, you do make the defendant wait until the end because the defendant can take an appeal. A defendant can be very happy with the outcome because he's acquitted, or the defendant can be unhappy and he can take an appeal. But to be clear, it's our position when Congress authorized appeals of dismissals, it was not rolling back the concept of finality. But you have to rely on smoke signals for that because that's not how they wrote the statute. It's not really smoke signals. If you're talking about someone who is writing a statute in a context where there's no reported decision of a dismissal without prejudice in the face of government recalcitrance, and they specifically say, we're trying to get at apex. That's one of the problems that we're trying to solve. There's no reason at all to think that they would be saying, oh, well, you know, let's just open the floodgates. With prejudice, without prejudice, we don't care. We'll let the government take as many risk-free. But Armstrong's been on the books for years, and I don't think your floodgates prediction has come to pass. I think if you rule against us, the floodgates will open because when we get orders for discovery in cases, the government's going to say, oh, no, we don't like that. Please dismiss without prejudice, U.S. v. Davis, if you go. But they waste all that time. Anyway, well, maybe. Unless the court has any further questions about jurisdiction. I want you to follow up on that 1291 analogy. You started and you got interrupted. You seem to think that that's the foundation. Well, the court in Flanagan, which of course was a defendant criminal appeal, and also in all sorts of other cases, speaks about finality as being very important. No, no questions, Stice. But didn't Flanagan specifically say that 3731 was a statutory exception to the final judgment rule? It did, but it certainly wasn't saying that the existence of 3731 makes 1291 irrelevant. No, no, I didn't mean to suggest that, but we have that Supreme Court language. That's why I wanted you to go back to 1291, where they recognize the finality of 1291. Right. And specifically choose to emphasize, though that 3731 was not the subject of the case, that that is a statutory exception. So isn't that a pretty compelling language? No, I would say 3731 is an exception, but it's not as all-encompassing. A statutory exception to the final judgment rule? What would you want an opinion of this court to say with regard to Flanagan saying that? That Flanagan recognized that finality was a vital part of the background. No question. And that when we look at 3731, there needs to be a clear signal that a dismissal, to be appealable, has to be a final decision. But Judge Fong is asking you, why is that consistent with the language in Flanagan saying 3731 is an exception to finality? It's like you're saying, well, no, we could write an opinion, I suppose, saying it was dictum, and the Supreme Court didn't have to say that, so we're not going to follow mere dictum. But I don't know how we deal with it other than that way. Well, I don't know if you would call the language in Wilson as dictum, but let me just go back for a second to the language in dictum in Wilson. The court says the legislative history makes it clear that Congress intended to remove all statutory barriers to government appeals. All. Right, and so that's what Judge Easterbrook was talking about. Yeah, and we know that's just wrong. They don't get to appeal whenever they want, and that's why Congress had to come back and deal with motions for a new trial, and to deal with government appeals in sentencing cases, because this court had said in Spoleto, you know, that dictum in Wilson just doesn't make it. We're not going to give the government an appeal in a sentencing case based on that language about removing all statutory barriers. It just is an example of the court speaking way too broadly, because in Wilson there was clearly a final decision that was under review by the government's appeal. No question about it. As a matter of fact, the Supreme Court has never once decided a government appeal where there was anything other than a final decision. Except Armstrong. No, I would not agree. Armstrong, if you look at the Ninth Circuit's opinion, they should consider it. Anything said by the Ninth Circuit is not necessarily true. That's one reason why they reversed the Ninth Circuit in Armstrong. They went to the panel. The panel in Armstrong, you might want to look at, had described it as without prejudice, and that did sound like what the Supreme Court was describing. Well, I think we have to go on with what Bach in the Ninth Circuit said. I mean, they certainly, in the end, Bach considered it to be with prejudice, and the Supreme Court just didn't say. And apparently the Solicitor General's office has a very easy comfort with, you know, we always do this, so now we can always do it, and that's why we're here today. Thank you. All right, well, we appreciate your argument.  Thank you, Your Honor. May it please the Court, I'm Allison Siegler from the University of Chicago Law School's Federal Criminal Justice Clinic, and I'm arguing on behalf of the appellees on the issue of discovery. In fake sash house robbery cases, the ATF creates a crime and then chooses people to commit it, and in Chicago, over 91% of the people they choose to commit this crime are people of color. So let me ask you this. I mean, these are very troubling statistics, but one of the things, as this unfolds, that the government says is certain neighborhoods have higher crime statistics than other neighborhoods, and you would have an association of racial characteristics if a neighborhood happened to be predominantly African American or predominantly Latino or predominantly something else, but now I'm thinking of the language from Phoenix and other cases. Would that be enough to show that the racial disparity of defendants was because of their race, or is it just in spite of their race? They're focusing prosecutorial resources on where the crime is. Your Honor, the government's claims that it's focusing on high crime districts that simply happen to be black are not borne out by the evidence. If you look at the government statistics, the ones they cited to this court, the third district where this operation occurred does not have anywhere near the highest index crime rate in the city. Of the 25 districts in Chicago, it's towards the middle. It's at the 33rd percentile. Furthermore, two of the districts that rank higher have more white people, and several of the districts that rank higher have a nearly equal African American and white population. Even when it comes to robbery rates, Your Honor, the third district isn't near the top. Your Honor, I would also posit to the court that it's really irrelevant that the operation in this case arose in the third district because truly the proper geographic area, if we're going to talk about what is the similarly situated comparison group here, would be far broader. It would be where all 97 defendants in the northern district of Illinois were drawn from, and that at a minimum is eight counties in the district. All right, so I have two other things. You can answer them in any order, and then I'll be quiet for a bit. Yes, Your Honor. One of them is the point that the government made in its reply brief that your brief here included a great deal more information that might have supported this order than was presented to the district court, and I'm troubled by that because it seems to me, especially looking at some of the other discovery orders that have been going on in the northern district, maybe we're not on an all-or-nothing basis. Maybe there's some discovery that's okay, but this order just went off the deep end. It's a far more extensive order than certainly Judge St. Eve's and actually some of the others as well. So I'm troubled about that aspect of things. So the court is troubled by the breadth of the discovery order? I'm troubled by the fact that you are giving us a lot of data that if I were the government, I would want to say something about it, and I always feel uncomfortable if at the appellate level a whole flood of new facts come in that no one's ever had a chance to respond to. Your Honor, what we were doing there was the government, in its opening brief, posited a similarly situated comparison group of people with prior convictions for drugs, guns, and robbery. So what we were doing there was to try to simply, sort of with our back-of-the-envelope calculations, to show there's further evidence that the district court did not err here in basing its ruling on the comparison group of all white people in the northern district of Illinois because if you even look at this narrower comparison group tailored to the government's criteria that they gave us in their opening brief, we simply wanted to establish that the court could take judicial notice of this idea that really any way you cut it, even if you cut it more narrowly than we cut it below and then we were able to cut it below, you have a really stark evidence of discriminatory effect in these cases. I don't understand why narcotics and firearms offenses are in this comparison group. So, Your Honor, that comparison group is something that we are really shooting in the dark here. That comparison group of narcotics and firearms offenses is something that was proposed by the government in their brief. But I don't understand it. You would have to say something about what are these firearms offenses? Are they felons in possession? I agree, Your Honor. It's very hard to know. If what the government is saying is that we haven't created a narrowly tailored enough comparison group, it's very hard to know how do we create that group. And, Your Honor, if we do simply go with felons in possession and then perhaps the government will say, no, no, no, there are some other firearms offenses you haven't included, it's very hard to know. I think that in some ways, whatever we were to do here, we would end up in a situation where the government is saying, no, no, no, you don't have the right comparison. So, are you saying that when you present these percentages in this comparison group of robberies, drug offenses, and gun offenses, you're not endorsing that as a way of demonstrating discrimination. You're just responding to the government. That is absolutely correct, Your Honor. Well, how would you propose to show discrimination? Your Honor, I think that in this context, what one needs to do is have the ATF's targeting criteria. If we knew the targeting criteria, their purported selection criteria, how are they choosing who's going to commit the crime that they're creating, then we could create a more narrowly tailored, similarly situated comparison group to make what I do believe would still be a very stark showing of discrimination. Well, I agree that's a good approach, but the discovery that you're seeking is much broader than that. Why wouldn't that be the place to start? What are the criteria? How do you choose who's going to do a sting? And, Your Honor, of the seven district courts that have ordered discovery, all of them have ordered, by my understanding, the ATF's targeting criteria, including Judge Staineve. And so, I absolutely agree. It is essential. If there's going to be a concern that we haven't been narrow, you know, created the correct, similarly situated comparison group, we would have to have those criteria. And Ms. Bonamici says you have lots of data at your fingertips to help make this class. Do you agree with that? Your Honor, I don't agree with that. For example, if we were to be trying to access information about all of the 97 defendants, first of all, from the outset, we don't know if it's criminal history that's the common thread or something else. Let's say we assumed it was criminal history. That might be a criteria in the manual you don't have for the guidelines. Exactly, right. So, if we were to assume that, then we would have to search through probably 5,000 to 10,000 pages of discovery. We would have to get the discovery from all of the 97 defendant's attorneys, search through that discovery, analyze and figure out what are the commonalities in these defendants' criminal histories. And even then, Your Honor, it would not have been evident that criminal history was the common thread if we did that for several reasons. First of all, in this case alone, there is one defendant who has zero criminal history. And secondly, there's another case in front of Judge Gettleman, the Paxton case in the district court, where the lead defendant does not have a prior conviction for any of these three offenses the government has laid out as relevant. And I'm happy to present that to the court in a brief after the argument. But the point is, we couldn't have known. And then, even if it did turn out, Your Honor, that the proper group was what the government's proposing here, it is impossible to get – there's not publicly available data on state-level convictions for those offenses. That's not possible to find. I have talked to the state authorities. I have talked to statisticians. We cannot get it. It's not publicly available. And therefore, the federal reserve – And the government has suggested that the comparison group should be broadened to include state as well as federal convictions, correct? They have suggested that, Your Honor. And you cannot get that? We absolutely cannot get that without a huge amount – I mean, we would need a court order, in essence. And also, I imagine, a huge amount of litigation that would follow from any kind of court order because it is not publicly available data. So those conviction statistics are not available from the state? They absolutely are not, Your Honor. I have spent many hours looking into this issue, and they are literally not available. Not only can we not figure out who has convictions for those particular crimes, we also can't figure out the race breakdown. None of that is available from the state. Counsel, were you invited – were the defendants in general invited to submit proposed discovery orders? Your Honor, the way that this happened was the defendants simply submitted the discovery order. They requested discovery in their motion, and the judge, in this case, adapted the discovery order. But they were in the form of discovery order. In other words, these orders weren't prepared by the judge, by him or herself. They were pursuant to the criteria you set forth. It's my understanding that's how that happened in this case, yes, Your Honor. What I'm saying is that the judges were not independently making these decisions. They were adopting your discovery orders, in effect. As far as the scope of the discovery order goes, yes, Your Honor. But how many judges did the in-camera inspection like St. Eve? Your Honor, it's my understanding that most of the judges – I don't have the exact number, but most of them did the in-camera inspection. Before they entered the order. And then there was no request here for more information on the CI. Is that right, or did I miss that? I know in the St. Eve case there was a request, and she also authorized discovery concerning the CI. And that was not a request here. That's correct, Your Honor. And it seems that that is also an avenue of exploration because then you find out how the CI got in the game and how the CI had that. But that request was not made here. Just thinking in terms of starting points and trying to narrow the broad request that was made here. That's correct, Your Honor. That request was not made here. So quickly, I'd like you to comment on the argument that's been made that actually Mr. Davis was the only one who was targeted, if you will, by the government. And he was the one who brought these other people in. They knew there would be other people, but they didn't know who they would be. They could have been of any race, any gang membership, any whatever. Your Honor, when the ETF made a discriminatory decision at point A in selecting the initial descendant, they knew that that decision was going to have discriminatory effects at point B. So they knew he was going to focus on other African Americans? Yes, Your Honor. I would say they did know that. First of all, they knew that he was going to go after other people. Sure, other people. And then secondly, yes. In fact, Your Honor, and this is something I'd be happy to submit to the court, in a public filing that happened after a debriefing in this case, the government acknowledged that, quote, this is a quote, the initial choice of a target would likely yield a group of conspirators mostly of the same race because, quote, it is well known in the social sciences that criminal networks form along racial and ethnic lines. Where did that come in? Your Honor, that was a filing in the Jackson case before Judge Durkin, and that was actually a government expert making that statement. And again, I would be happy to submit that to the court. So it is very much our position that the targeting is on behalf, is against all of the defendants, and the discriminatory effect is against all of the defendants. I would say that if the court thinks that this is a factual issue that is essential to the legal issue and that it's unresolved and that we haven't established sufficiently, then that would be the basis for a remand and evidentiary hearing. Suppose the government, the prosecutors, focused on black people, stinging black people, because on average they're poorer, and they figure the poorer you are, the more susceptible you are to the kind of blandishments that are offered in Stash House Sting. Would that be racial discrimination? It would be a nice thing to do, but would that be racial discrimination if the race is just being used as a proxy for likely income and therefore likely financial need? Your Honor, it seems very much that that is a question that would have to be addressed at the eventual motion to dismiss stage. The threshold for discovery is the sum evidence threshold. We believe we've met that, but at the later stage, Your Honor, I could imagine having a statistical analysis in which an expert would have to explain why race was actually a purposeful factor and why any race-correlated factors like poverty were not actually what was really the operational issue on behalf of the ATS. But again, I think that is a question for the next stage, and here the threshold is far lower. I see my time is up. Thank you very much. Thank you. Anything further, Mrs. Bonamici? Your Honor, following up on this discussion about information that was not before the district court in this case, it is inaccurate, I think, to say that we have posited a group. In fact, in the panel, the oral argument at the panel stage, we were struggling with respect to that and stated specifically that we had intentionally not done that because that is absolutely not our burden. With respect to the kinds of things that have been discussed in the other cases, it is accurate that the government has filed an expert opinion publicly in one of the other cases, but we do not agree that that would be an appropriate basis for this court to reach any conclusion in this case, although if the court is interested in seeing it, we're more than happy to provide it. Are there any statistics about the actual stash house robberies? I'm sorry? Are there any statistics about actual as opposed to, you know, stung stash house robberies? I don't know of any, but there's a lot of information that I don't know of any statistics. Because they're very dangerous, often they're killings. Well, there was a footnote in the briefs with a long list of actual robbery cases. Right, that's what I was going to say. I don't know of statistics, which is what I thought you were asking about, but there are actual cases. And there are also cases that we hear about after the fact that are never reported when we debrief informants or debrief defendants and obtain information through proffers. An example of the case that was recently before you where the defendant or the confidential informant reported to the government that the defendants, the targets, were heavily armed because they had recently been robbed. It's that kind of information. Are you saying the Justice Department does not have statistics on stash house robberies? I said, Judge, I don't know of any. That's all I can say to that. And what about this point in terms of access to state court records? Because counsel disputed your statement that this information was available with respect to background criminal records. Well, what I was talking about is information about the defendants that we have charged in these cases in order to assemble the list of characteristics. With respect to the state court records, there are records that are publicly available regarding victimization and regarding arrests. Those records are available. What I believe counsel was talking about is specific NCIC-type information about individual defendants. I don't believe that that is available. And it's also unavailable. The numbers regarding convictions, I believe, is also unavailable. But there is information from which the defendants could draw, and, of course, this would really go to the overall set and really wouldn't say anything about defendants or targets who were ignored by the government or in situations, for example, where multiple people were arrested and only seven were arrested. Right. What you're about to say illustrates the problem with trying to apply the Armstrong Standard in the context of this kind of crime because it's government-initiated. So the struggle on all sides to come up with the proper statistical measure to get in the door to obtain a discovery order suggests that that standard needs to be relaxed or revised or reconceived for purposes of a government-initiated crime like a stash house robbery. Well, that assumes that statistics are the best way to get in the door, and I don't know that that's necessarily true. What would be? What could be? Actual evidence of actual discrimination. You're talking about a holistic file review, which may be a way of demonstrating enough of a showing to meet the Armstrong Standard, but that presupposes some information about the targeting standards that the HES is using in order to do that kind of holistic file review. I'm not sure I know what you mean by holistic file review, what you mean by that, but what I would say is... We're talking about going to each case that's been propagated and looking at the entire file that's been disclosed to the defense about... Actually, I'm talking about the defendant's own personal experience. I'm saying that in that case, if there were evidence of bias on the part of... Where would that evidence come from? It would come from discovery. It would come from reports. It would come from reported conversations. You were discouraging statistics. I don't understand what other evidence there would be. Some police officer says, you know, I don't like white people. To the point of statistics, does a U.S. attorney keep a statistic on prosecutable crimes that they choose not to go on? You don't keep such a statistic, do you? Does the Justice Department have any statistics on that? That's correct, but... So the universe of statistics with regard to what you do go on and what you don't go on is almost impossible to amass because in the 94 federal district courts, U.S. attorney's offices, they've been varied, right? Well, that's true, but to say that that was not recognized in Armstrong I think is a grave mistake. Armstrong involved a sting operation. It involved exactly these same problems. The point is... Does the IRS occasionally make a decision, for example, to go after the underground economy and go after, let's say, waiters and home care bartenders?  Is a setting like that, where they go criminals, is a setting like that selective prosecution or targeting? If the IRS makes a decision for 2016 concerned about the loss of revenue from the underground community and targets, as I say, home care folks, people are paid daily. Whether you would call it selective or targeting, it would not be improper because it is not based on an improper basis. Even if it has the impact of affecting low economic groups, as Judge Posner was making inquiry about. That's correct, and we fall back on the fact that in order to protect the core functions of the executive, in order to protect those functions from unnecessary intrusion, a high bar is set for discovery. If there is a case where there is specific evidence of bias, that is a case where clearly the defendants are going to get much farther into the door. But if what we're talking about is a lack of evidence like that, the Supreme Court has stated... Does the government have written criteria for stings? For all stings? Stash house. Information regarding that criteria was provided in discovery in one of the cases. The full extent of it, I don't know and I'm not speaking to. But the point, again, we fall back on, there's a presumption of regularity, there's a presumption that the government is acting in good faith, and it's incumbent upon the defense to make a showing that meets the Armstrong standard in order to get any discovery at all. Otherwise, the information is properly confidential. Ms. Bonamici, let me ask you, I asked a question about the orders of discovery, and those are derived from submissions by the defendant? I believe so, in every case, yes. In other words, the expert testimony, the judge doesn't take in the expert testimony, come up with his or her criteria, and then say this is what I think you need for a discovery order. They accept or reject all or parts of what's tendered by the defendant. That's right, Your Honor. All right, well, thank you very much. Thanks to all the counsel. We will take the case under advisement. Court will be in recess.